UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERR CONTENT IP, LLC,
Plaintiff,

-v-

NFL ENTERPRISES, LLC,
Defendant.

25-CV-9450 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Err Content IP, LLC ("Err Content") asserts a claim of patent infringement against Defendant NFL Enterprises, LLC ("NFLE"). (ECF No. 10.) Before the Court is NFLE's motion to dismiss Err Content's First Amended Complaint (the "FAC"). (ECF No. 17.) For the reasons that follow, the motion is denied.

## I. Background

The following facts are taken from the FAC and documents attached to the FAC as exhibits, and are presumed true for purposes of resolving the present motion. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

On July 21, 2020, the United States Patent and Trademark Office issued Patent No. 10,721,542 (the "'542 Patent"), titled "Method and Device for Providing a Main Content and an Extra Content to a User Through Reference Item."[1] (ECF No. 10 ("FAC") ¶ 12; ECF No. 10-1 ("Pat.") at 2.). Err Content is the exclusive owner by assignment of all rights, title, and interest

[1] Although the FAC alleges that the '542 Patent is entitled "Bandwidth shaping client to capture, transform, cache, and upload images from a remote point of recordation to a network service," the '542 Patent itself provides a different title.

in the ’542 Patent. (FAC ¶ 12.) NFLE is not licensed to use the ’542 Patent and does not enjoy or benefit from any rights in or to the patent. (*Id.*)

The ’542 Patent discloses “[a] method for providing a main content and an extra content to a user by accessing said extra content through a reference item.” (Pat. at 2.) Prior art methods “have the disadvantage to force in practice the user to leave the main content” to get access to extra content, and limited users to the same device used to reproduce the main content to reproduce the extra content. (*Id.* at 7.) The ’542 Patent, in contrast, claims a method pursuant to which main content received from a first source is displayed on a first device and extra content originating from a second source is displayed simultaneously as the main content on either the first device or, alternatively, on a second device. (*Id.* at 7-8.) Generally, the extra content changes in correspondence with a change in the main content. (*Id.* at 8.) To accomplish this, the patented method links the main content and the extra content through a reference item, such as metadata, forwarded by the first device to the second device. (*Id.* at 7-8.)

Claim 1 recites:

> 1. A method for providing a main content and an extra content to a user, said method comprising:
> receiving a specific main content and metadata from a first source and displaying said specific main content on a first device, wherein said metadata and said specific main content are broadcasted together from the first source, and wherein said metadata links said specific main content with an extra content;
> forwarding said metadata to a second device, wherein:
> the forwarding of said metadata is executed by scanning said metadata by said second device,
> the second device receives said extra content from a second source, and
> said specific main content is displayed on said first device while said extra content is displayed on said second device;
> wherein the extra content changes in correspondence to a change of the specific main content;
> wherein the first source is different from the second source;
> wherein, when the extra content is selected, the extra content does not change even if the specific main content is changing, and any new extra content, which correlates to the changing specific main content, is delayed from being displayed on the second

> device until such time as a confirmation or input is received at the second device from the first device, and
>
> wherein the confirmation or input is initially received at a command key of the first device, which is displaying the specific main content, such that the first device's command key, when selected, provides the confirmation or input and further causes the second device to display the new extra content.

(Pat. at 10-11.) The '542 Patent includes thirteen additional claims. (*Id.* at 11.)

Err Content alleges that NFLE has directly infringed at least claim 1 of the '542 Patent by making, using, testing, selling, offering for sale, and/or importing into the United States its NFL app system and related systems, available at https://www.nfl.com/ (the "Accused Products"). (FAC ¶¶ 15, 17.) In particular, Err Content alleges that the NFL App has a method for providing a main content and an extra content to a user because it allows users to cast videos from a smartphone to a second device, such as a television. (*See* ECF No. 10-2 at 5.)

Err Content commenced this action on November 12, 2025. (ECF No. 1.) It filed the FAC on November 17, 2025 (FAC) and attached both the '542 Patent (Pat.) and a patent claims analysis (ECF No. 10-2) as exhibits. NFLE filed a motion to dismiss on February 19, 2026 (ECF No. 17), alongside an accompanying memorandum of law (ECF No. 18 ("Mem.")). Err Content filed an opposition on March 5, 2026. (ECF No. 24 ("Opp.").) NFLE filed a reply in further support on March 11, 2026. (ECF No. 25 ("Reply").)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff seeking to establish facial plausibility must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). "Plausibility depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink*, 714 F.3d at 741 (cleaned up). "The court must also construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quotation marks omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quotation marks omitted).

## III. Discussion

The FAC asserts one cause of action for patent infringement under 35 U.S.C. § 271. (FAC ¶¶ 16-24.) Err Content alleges that NFLE directly infringes the '542 Patent, induces third parties such as customers to infringe the '542 Patent, and contributorily infringes by encouraging others to do so. (*Id.* ¶¶ 17, 23, 24.) NFLE argues, in turn, that the FAC fails to plausibly state a claim for either direct or indirect infringement. (Mem. at 10-15.) The Court takes each argument in turn.

### A. Direct Infringement

"Liability for direct infringement arises when a party 'without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent.'" *Signify N. Am. Corp. v. Axis Lighting Inc.*, No. 19-CV-5516, 2020 WL 1048927, at *2 (S.D.N.Y. Mar. 4, 2020) (quoting 35 U.S.C. § 271(a)), *order amended on reconsideration*, No. 19-CV-5516, 2020 WL 2079844 (S.D.N.Y. Apr. 30, 2020). "There are 'five elements of a patent infringement [claim:] (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked.'" *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885, 2017 WL 74729, at *3 (S.D.N.Y. Jan. 4, 2017) (quoting *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013)). "A method patent claims a number of steps[,] . . . [and] the patent is not infringed unless all the steps are carried out." *Richardson v. Adobe, Inc.*, No. 22-CV-7114, 2024 WL 4135347, at *11 (S.D.N.Y. Sep. 10, 2024) (quoting *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014)). "Direct infringement under § 271(a) occurs [only] where all steps of a claimed method are performed by or attributable to a single entity." *Id.* (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)).

The FAC alleges that the "NFL app system and related systems" directly infringe the '542 Patent. (FAC ¶¶ 15, 17.) Specifically, the FAC states that NFLE has directly infringed "at least claim 1 of the '542 Patent[] by making, using, testing, selling, offering for sale and/or importing into the United States [NFLE's] Accused Products." (*Id.* ¶ 17.) The claim chart attached to the FAC purports to map each element of claim 1 onto the NFL App and includes screenshots from a YouTube video that explains how to cast video from the NFL mobile app to a

television. (*See* ECF No. 10-2.) The claim chart alleges that the NFL App sends information about the video playing on the phone to the second device and allows the second device to receive the video information and then to play the video "from its own media source, such as a streaming service or broadcast channel." (*Id.* at 9-13.) In support, the claim chart includes screenshots from a YouTube video that explains how to cast video from the NFL mobile app to a television using something called "Smart View." (*See generally id.*)

"[A] complaint for direct infringement survives a motion to dismiss if it: (1) attaches the asserted patents to the complaint, (2) specifically identifies the accused products and attaches photographs of them to the complaint, and (3) alleges that the accused products meet each and every element of at least one claim of the asserted patents." *Araujo v. E. Mishan & Sons, Inc.*, No. 19-CV-5785, 2020 WL 5371323, at *2 (S.D.N.Y. Aug. 7, 2020) (quotation marks omitted), *report and recommendation adopted*, No. 19-CV-5785, 2020 WL 5369888 (S.D.N.Y. Sep. 8, 2020). Err Content has met this low bar: It has attached the '542 Patent to the FAC, identified the NFL App as an accused product, attached photographs of the NFL App, and alleged that the NFL App meets every element of claim 1 of the '542 Patent. (*See generally* ECF No. 10-2.)

NFLE primarily contends that the alleged infringement documented in the screenshots does not interact with the NFL App, but with software native to the mobile device used in the video. (Mem. at 11-12.) In doing so, NFLE asks the Court to take judicial notice of the fact that the "Smart View" feature used to cast the video in the YouTube tutorial is a Samsung product, not an NFLE product. (*Id.*) The Court acknowledges that this fact, if true, would be damning to Err Content's case. But the FAC and the claim chart allege that it is an NFLE feature that facilitates the casting, and those allegations do not suggest that the "Smart View" feature used in the YouTube tutorial is necessarily the Samsung Smart View feature, rather than a feature of the

NFL App. Indeed, nothing in the FAC, the claim chart, or the YouTube tutorial rules out the possibility that the NFL App contains a casting feature called "Smart View" that coincidentally shares a name with the Samsung feature. Under these circumstances, the Court need not take judicial notice of the websites explaining Samsung's Smart View, as even if the Court were to do so, it could not conclude that the allegations in the FAC are consequently implausible.[2] *Cf. Bot M8 LLC*, 4 F.4th at 1354 (holding that a complaint pleaded away from a claim because allegations in the complaint "render[ed] [the plaintiff's] infringement claim not even possible, much less plausible").

NFLE also contends that, because the YouTube video was posted more than six years prior to the commencement of this action, the actions contained in the video fall outside the six-year statutory damages window. (Mem. at 11.) However, the FAC expressly alleges that NFLE "continues to directly infringe" the '542 Patent (FAC ¶ 17), and the mere fact that Err Content relies on an older video in support of its claims does not contradict or nullify that allegation.

Finally, NFLE argues that the FAC fails to plausibly state a claim for direct infringement on the basis that it "alleges at least three separate entities who perform claim steps." (Mem. at 14.) NFLE argues that, alongside the NFL App that receives, displays, and forwards information, the FAC and claim chart allege that the second device and the user of the devices perform some of the claim steps by selecting options, causing commands to be sent, and receiving content. (*Id.*) However, the key conduct disclosed in claim 1 concerns (1) receiving a

[2] Although the Court declines to resolve the motion to dismiss based on whether the alleged infringement is actually a result of third-party products, the argument may warrant targeted discovery and a limited summary judgment motion on the issue, especially given that Err Content does not deny NFLE's contention that the allegedly infringing method is not in fact a feature of the NFL App but rather native to the first device. (*See* Opp. at 10 (arguing only that NFLE's argument is a factual question best reserved for discovery).)

specific main content and metadata from a first source and displaying said content on a first device; and (2) forwarding said metadata to a second device. (Pat. at 10.) Err Content has alleged that it is the NFL App, and not another party, that performs those functions. (*See* ECF No. 10-2 at 5, 9, 11, 20-22, 29.)

Err Content's additional allegations as to the role of third parties are still consistent with the covered method under the '542 Patent, which indicates that the first device forwards content only once its command key is selected—presumably by the user of the first device—and that the second device scans the metadata forwarded by the first device, receives extra content from the second source, and displays the extra content. (Pat. at 10-11.) Accordingly, Err Content's allegations as to the role of the user or the second device do not depart from the elements set out in the '542 Patent. Instead, the critical inquiry is whether NFLE is responsible for the participation of the user and the second device in the allegedly infringing conduct, such that "a third party hoping to obtain access to certain benefits can only do so if it performs certain steps identified by [NFLE], and does so under the terms prescribed by [NFLE]." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1352 (Fed. Cir. 2018) (quotation marks omitted). The claim chart provides that NFLE "support[s] casting for certain content," and that once a user tries to access casting, "the NFL+ Premium casting command is sent, which causes the TV (the second device) to display the new video." (ECF No. 10-2 at 28.) The claim chart further alleges that the NFL App "is set up" in such a way that it "forward[s]" metadata to the second device and "allows" the second device to receive the information and to play the extra content at the same time that the first device plays the main content. (*See, e.g.*, ECF No. 10-2 at 9, 11, 20-22, 29.) At this early stage of litigation, and drawing all inferences in favor of Err Content, these allegations establish

that those who seek to cast content from the NFL App must do so through NFLE's allegedly infringing method.

As with NFLE's arguments about third-party functionality, it may well be that the alleged infringement is divided among multiple actors who are not acting pursuant to NFLE's control or involvement, but that conclusion is not evident from the face of the pleadings. Accordingly, any factual determination about the technical operation of the casting feature is best reserved for claim construction or a targeted summary judgment motion. *See Nalco Co.*, 883 F.3d at 1350 ("It is not appropriate to resolve [factual] disputes . . . on a Rule 12(b)(6) motion, without the benefit of claim construction.").

**B. Indirect Infringement**

NFLE argues for dismissal of Err Content's indirect infringement claims on the basis that Err Content has failed to plausibly allege direct infringement and there can be no induced or contributory infringement without an underlying act of direct infringement. (Mem. at 14-15.) For reasons explained above, that argument fails, as Err Content has met the standard to survive a motion to dismiss on its direct infringement claim.

NFLE also argues that the induced infringement claim fails because Err Content fails to allege specific intent.[3] (*Id.*) "To state a claim for induced infringement pursuant to 35 U.S.C. § 271(b), plaintiff must demonstrate that the 'alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'" *Richardson*, 2024 WL 4135347, at *11 (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009)). But *Richardson v. Adobe, Inc.*, the case on

[3] NFLE does not make this argument as to Err Content's contributory infringement claim and does not make any other argument for dismissal of the contributory infringement claim, except for its argument about underlying direct infringement.

which NFLE relies (Mem. at 15), is instructive as to why NFLE's argument fails. There, the Court acknowledged the specific intent requirement and held that, "if the FAC adequately alleges that [the defendant] knowingly induced a single entity or individual to infringe the patents-in-suit, then Plaintiff has satisfied each element of an indirect induced infringement claim." *Richardson*, 2024 WL 4135347, at *13. Here, the FAC alleges that NFLE "has known of the '542 Patent and the technology underlying it from at least the filing date of the lawsuit" and "has actively encouraged or instructed others . . . , and continues to do so, on how to use its products and services . . . such as to cause infringement of one or more of claims 1-14 of the '542 [P]atent." (FAC ¶¶ 23-24.) These allegations suffice at the motion-to-dismiss stage, as allegations of active inducement and of "[p]roviding instructions to use a product in an infringing manner [constitute] evidence of the required mental state for inducing infringement." *Richardson*, 2024 WL 4135347, at *12 (alteration in original) (quoting *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014)).

NFLE articulates potentially fatal defects in the FAC and a concerning pattern with Err Content's counsel, and it may well prevail on its arguments after discovery. Indeed, as the Court notes above, even limited discovery and narrow summary judgment briefing may decide the matter. At this early juncture, however, Err Content's claims are sufficient to proceed. *See Kaufman v. Monday.com Ltd.*, No. 23-CV-5864, 2024 WL 3090146, at *2 (S.D.N.Y. June 21, 2024).

## IV. Conclusion

For the foregoing reasons, NFLE's motion dismiss is DENIED. NFLE shall file its answer to the complaint within two weeks of the date of this Memorandum and Order.

In addition, the initial pretrial conference is hereby reinstated and RESCHEDULED for August 17, 2026 at 3:30 p.m. Counsel shall dial 855-244-8681 and use code 2312 828 7066 ##

at that time. The parties shall jointly submit a proposed case management plan at least seven calendar days prior to the date of the conference, as explained in the Order at Docket Number 11.

The Clerk of Court is directed to close the motion at Docket Number 17.

SO ORDERED.

Dated: July 27, 2026
New York, New York

J. PAUL OETKEN
United States District Judge